**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

**Civil Action No. 16-cv-01058-MSK-MJW**

**COLORADO REPUBLICAN COMMITTEE,**

    **Plaintiff,**

v.

**JOHN DOE,**

    **Defendant.**

## ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED

**THIS MATTER** comes before the Court *sua sponte*,[1] upon review of the Complaint (#1). For purposes of this order, the Court assumes the truth of all well-pled facts alleged in the Complaint.

The Complaint alleges that the Plaintiff ("CRC") held its convention in April 2016 during which a CRC representative announced that Ted Cruz had been selected as the party's preferred candidate over Donald Trump. Shortly after the announcement, an unknown individual (identified as Defendant John Doe for purposes of this litigation), accessed the CRC's Twitter account without authorization and sent a tweet purportedly from the CRC that said "We did it. #NeverTrump."

The CRC conducted an investigation into who sent the tweet and confirmed that the tweet was sent using the Twitter for iPhone app, but CRC was not able to identify the person

---

[1] This Court possesses the power to notify a plaintiff of a potential *sua sponte* dismissal of a facially-defective complaint. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001). The Court acts *sua sponte* here because the Defendant is a "John Doe," a fictitious entity who will not receive service of the Complaint, and the corresponding opportunity to challenge the sufficiency of the pleading, until significant discovery – including discovery directed at third parties – has already occurred.

responsible. Following the unauthorized tweet, CRC officers, staff members and family members received anonymous threats of physical harm. Pursuant to 18 U.S.C. § 1030(g), CRC asserts a single claim for a monetary award of damages against Doe. It is premised upon this federal statute that CRC asserts that the Court has subject matter jurisdiction.

18 U.S.C. § 1030 is a criminal statute. The statute makes it a crime for any person to "intentionally access a protected computer without authorization" if that access "causes damage or loss." 18 U.S.C. § 1030(a)(5)(3). A "protected computer" includes any computer used in interstate commerce. 18 U.S.C. § 1030(e)(2)(B). A "loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

Although the statute is primarily a criminal one, subsection (g) provides for a civil remedy in limited circumstances. It states that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). However, the civil remedy is only available if the conduct involves certain identified aggravating factors, that is, those found at 18 U.S.C. § 1030(c)(4)(A)(i)(I) – (V). 18 U.S.C. § 1030(g). In its Complaint, the CRC does not expressly identify which of the aggravating factors it relies upon. It appears to the Court that the only arguably applicable factor is found in sub-section (c)(4)(A)(i)(IV) – conduct that involves "a threat to public health or safety."

Thus, for the CRC to state a civil claim under 18 U.S.C. § 1030, it must allege facts that, if true would satisfy following elements: (i) that it is a "person" under 18 U.S.C. § 1030(e)(12);

(ii) that Doe accessed a "protected computer"; (iii) without authorization; (iv) and that the access caused CRC to suffer a loss; (v) and that such loss involved a threat to public health or safety.

It appears to the Court that CRC's Complaint fails to allege facts sufficient for several of the required elements. Without sufficient allegations to state a claim, there is no federal question that supports this Court's exercise of jurisdiction.

The Complaint's allegations are sufficient with regard to elements (i) through (iii).[2] However, the Complaint does not adequately allege that CRC suffered a "loss," as that term is statutorily-defined. The statute defines a "loss" as "any reasonable cost to any victim," and then offers a series of examples, all of which tie the concept of "loss" to costs incurred in assessing the nature of the unauthorized access, the costs of restoring access to the affected computer, or costs incurred as a result of any interruption of service. 18 U.S.C. § 1030(e)(11). Here, the CRC does not specifically point to any "loss" that it allegedly suffered as a result of Doe's conduct. The Complaint states that a CRC official had to send a curative message disavowing Doe's "We did it" message, *Docket # 1*, ¶ 15, and it refers to "an investigation" that CRC conducted, *id.*, ¶ 16. But the Complaint does not allege that either activity constituted a "loss" to CRC. The Complaint alleges that CRC suffered injury to its reputation as a result of Doe's actions, but the Court has some doubt that an injury to reputation, unconnected to the unauthorized computer access, is a loss contemplated by the statute. *See Farmers Ins. Exch. v. Auto Club Group*, 823 F.Supp.2d 847, 855 (N.D.Ill. 2011) ("[c]osts not related to computer impairment or computer damages are not compensable").

---

[2]   The Court assumes, without necessarily finding, that Doe's unauthorized access to CRC's Twitter account, on a computer owned by Twitter, is nevertheless sufficient to state a claim. *See e.g. Sewell v. Barnardin*, 795 F.3d 337, 341 & n. 6 (2d Cir. 2015) (assuming unauthorized access to the plaintiff's social media accounts could state a claim).

Second, and more importantly, the Court finds that CRC has failed to adequately allege that Doe's conduct "involved" a threat to public health or safety. The Complaint alleges that Doe's conduct was accessing CRC's account without authorization and sending the "We did it" message. Such conduct did not, in and of itself, "involve" a threat to public health and safety: Doe's message did not threaten others or directly or indirectly encourage or invite a violent response. According to the Complaint, "anonymous" persons sent threats of physical harm to CRC officials[3] in response to the unauthorized tweet. Regardless of whether there is a causal link between the unauthorized tweet and the anonymous threats – a link that the Complaint conspicuously avoids alleging -- such threats were made by **third parties,** not by Doe. There is no allegation in the Complaint that Doe knew of, directed, or participated in making the threats. Thus, there is no allegation that Doe's conduct, with which the statute is concerned, "involve[d]"[4] a threat to public health or safety, as is required by 18 U.S.C. § 1030(g).

---

[3] To the extent that CRC would contend that the death threats are the "loss" for which it seeks compensation, there is an additional obstacle: the threats were made to CRC's "officers and staffers," not to CRC itself. The Court has some doubt that CRC would have standing to seek compensatory redress for threats directed to its members or officers, as opposed to threats directed at the organization itself.

[4] In this regard, it is important to observe the interplay between § 1030(g), which incorporates subsections (I) through (V) of subsection (c)(4)(A)(i), and subsection (c)(4)(A)(i) itself. Subsection (g) creates a civil remedy "if the conduct involves" enumerated harms, whereas subsection (c)(4)(A)(i) provides for an enhanced sentence "if the offense caused" those same listed harms. (Emphasis added.) By setting forth its own definition of "involves" that refers to the harms themselves, rather than to the causation standard in subsection (c)(4)(A)(i), the Court assumes that Congress intended the civil remedy to be narrower than the criminal application: to apply only when the conduct of engaging in unauthorized access actually involved a threat to physical health or safety, not when authorized access that was otherwise benign had the indirect effect of causing a threat to health or safety. For example, unauthorized access to a computer that controlled medical equipment or unauthorized access that disables emergency telephone services might satisfy the requirements of subsection (g), as the conduct itself involves a risk of harm to public safety. But unauthorized access that simply entailed defacing a website with a message – "Kilroy was here" – can hardly be said to be conduct that involves a risk to public health or safety simply because an unrelated party responded to that message with unprovoked threats of violence. Holding otherwise would replace subsection (g)'s

For these reasons, it appears to the Court that the action must be dismissed. The Plaintiff is therefore **ORDERED TO SHOW CAUSE** in writing within 14 days as to why this case should be dismissed under Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6), or shall file an Amended Complaint that cures the defects noted herein. Failure to respond will result in the Complaint being dismissed without further notice.

Dated this 24th day of May, 2016.

BY THE COURT:

Marcia S. Krieger
Chief United States District Judge

---

"conduct involves" standard with a tort-like "proximate cause" standard akin to subsection (c). Because the Court must assume that Congress purposefully chose to impose different standards in subsection (g) and subsection (c)(4)(A)(i), it finds that CRC must allege facts showing that it was Doe's conduct, not the conduct of others, that presented a threat to public health or safety. Doe's posting of the innocuous "We did it" message is not sufficient to meet this standard.